ROB L. PHILLIPS
Nevada Bar No. 8225
Rob.phillips@fisherbroyles.com
FISHERBROYLES, LLP
5670 Wilshire Blvd.
Suite 1800
Los Angeles, California 90036
Telephone: (702) 518-1239
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEBSITE MANAGEMENT SYSTEMS, LLC, a Nevada Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN DAILEDA, an individual residing in Nevada, MELVIN OMAN, an individual residing in Nevada, DEVAN HIRST, an individual residing in Nevada, YES WE WILL, INC., a Nevada Corporation, and DOES 1-X,<br><br>Defendants. | Case No.: 2:20-cv-00213<br><br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

Pursuant to Nev. Rev. Stat. § 600A.010, *et seq*., and the terms and covenants of contractual agreements, Plaintiff Website Management Systems, LLC ("WMS"), a Nevada Limited Liability Company ("Plaintiff"), by and through its counsel of record, hereby moves this Court for a Temporary Restraining Order and for entry of a Preliminary Injunction against Defendants Benjamin Daileda ("Daileda"), Melvin Oman ("Oman"), Devan Hirst ("Hirst") and Yes We Will, Inc. ("Yes We Will") (collectively "Defendants").

Plaintiff bases this Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") on the pleadings and records on file herein, the Memorandum of Points and Authorities set forth below, the Declaration of Rob Raskin ("Raskin Decl."), all of which are attached hereto and incorporated herein by this reference, and any oral argument of counsel

received by this Court.

## I.     INTRODUCTION

Plaintiff seeks the entry of a temporary restraining order and thereafter a preliminary injunction against Defendants Daileda, Oman, Hirst and Yes We Will, to prohibit the wrongful possession and wrongful use and disclosure of Plaintiff's trade secrets and proprietary information and data, including without limitation business strategies, sales presentations, initial customer pitches, methods of securing reliable leads for new customers, retaining qualified customers, customer lists, website features, and trade secrets including: (i) a process for optimizing the search results position of a customer's website based on key words; (ii) a detailed in-house procedure for identifying leads; (iii) list of leads generated from the detailed in-house procedure for identifying leads; (iv) a password protected website demo which Plaintiff uses to show customers the benefits of utilizing Plaintiff's search engine optimization tools; and (v) a detailed in-house order fulfillment procedure to satisfy customer needs, as well as other related proprietary/confidential information and data (collectively "Plaintiff's Confidential Data").

Plaintiff further seeks the entry of a temporary restraining order and thereafter a preliminary injunction against Defendants Daileda, Oman and Hirst from competing with Plaintiff pursuant to the Non-Compete provisions set forth in their respective employment agreements ("Employment Agreements").

Each of the Defendants Daileda, Oman and Hirst were employed under their respective at-will Employment Agreements until about the end of December 2019 and beginning of January 2020.

On or about January 23, 2020, WMS received a call from a customer asking if Plaintiff had called because the customer had received a call from a number with a 702 area code and heard the same sales presentation used by Plaintiff. On or about January 24, 2020, a second customer called Plaintiff with a similar story. Based on the aforementioned calls, Plaintiff began an investigation and learned that Defendants had committed, and continue to commit, wrongful acts against Plaintiff. Defendants have refused to cooperate with Plaintiff to resolve this matter

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

2

without judicial intervention.

Plaintiff is therefore forced to seek injunctive relief because Plaintiff is exposed to, have suffered, and will continue to suffer, irreparable harm to their business, and to their economic and competitive positions, due to the willful, intentional and wrongful misappropriation of Plaintiff's Confidential Data by Defendants. Absent an injunction enjoining the wrongful possession of, use, dissemination, disclosure and/or exploitation of Plaintiff's Confidential Data, Plaintiff will continue to suffer irreparable harm.

Plaintiff is further forced to seek injunctive relief due to the breach of Non-Compete provisions by Defendants Daileda, Oman and Hirst causing Plaintiff irreparable harm to its business, and to its economic and competitive positions. Absent an injunction enjoining Defendants Daileda, Oman and Hirst from competing with Plaintiff, Plaintiff will continue to suffer irreparable harm.

## II. STATEMENT OF RELEVANT FACTS

### A. Basis For The Motion

This action as detailed in Plaintiff's Complaint (Dkt. No. 1) arises out of Defendants' Daileda, Oman and Hirst breach of their at-will Employment Agreements with Plaintiff and Defendants violation of Nevada's Uniform Trade Secrets Act ("UTSA") (or their violations of Nevada common law) regarding the protection of, unauthorized receipt of, and unlawful possession of and control of confidential and proprietary information.

In plain violation of the express terms and conditions of their Employment Agreements, Defendants' Daileda, Oman and Hirst systematically collected Plaintiff's Confidential Data for their own personal benefit for their own personal benefit. Further, Defendants' Daileda, Oman and Hirst have transferred Plaintiff's Confidential Data to their new entity, Yes We Will. Accordingly, Defendants have misappropriated considerable trade secrets and proprietary and confidential assets rightfully belonging to Plaintiff and through concerted and willful efforts obtained such assets to improperly utilize the same for their own benefit and/or the benefit of others.

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

3

FISHERBROYLES, LLP
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

In plain violation of the express terms and conditions of their Employment Agreements, Defendants' Daileda, Oman and Hirst started a competing business prior to leaving employment with Plaintiff[1]. The new business operates in the same city (Las Vegas) as Plaintiff, offers the identical services as Plaintiff and relies on Plaintiff's Confidential Data to unfairly compete.

Plaintiff therefore seeks entry of a temporary restraining order and a preliminary injunction that enjoins Defendants and any and all agents, servants, partners and any other person or entities acting for, with, by or through, under, or in association with Defendants, from (1) possessing, using, exploiting, disclosing or disseminating Plaintiff's Confidential Data; (2) utilizing the misappropriated Plaintiff's Confidential Data for the benefit of themselves and/or any third party; (3) requiring Defendants to immediately return any and all electronic or hard copies of Plaintiff's Confidential Data to Plaintiff; (4) requiring Defendants to identify each computer, storage device or storage medium to which Defendants migrated or copied Plaintiff's Confidential Data; (5) requiring Defendants to identify each person and entity, including a name, address, telephone number and email address, to whom Defendants shared Plaintiff's Confidential Data; (6) requiring to Defendants to preserve Plaintiff's Confidential Data that it possesses pending further order of this Court; and (7) requiring Defendants to cease competing with Plaintiff pursuant to the terms and conditions of their respective Employment Agreements.

**B.     Plaintiff's Confidential Data**

As part of its business operations, Plaintiff created valuable confidential and proprietary information including existing customer lists, prospective customer lists, website content and methodologies for: (i) optimizing the effectiveness of websites to be located by search engines; (ii) finding qualified customers, (ii) selling/closing qualified customers; (iii) servicing qualified customers and (iv) retaining qualified customers. Raskin Decl., at ¶3. Plaintiff's business operations involve search engine optimization and custom website development. Raskin Decl., at ¶2. Search engine optimization is the practice of manipulating a website to ensure that it appears on a first page or other high ranking page of search results responsive to certain keywords being

---

[1] Evidence shows that Defendants Daileda, Oman and possibly Hirst formed the entity Yes We Wil, Inc. to compete with Plaintiff while employed by Plaintiff.

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

4

1  searched. Raskin Decl., at ¶2.  Plaintiff accomplishes this objective using Plaintiff's Confidential Data in a proprietary manner. Raskin Decl., at ¶2.  More precisely, WMS has developed a very detailed and specific process for optimizing the search results position of a customer's website based on key words. Raskin Decl., at ¶2.  Importantly, WMS' process, and confidential campaign websites, allows the customer's website to remain unchanged and uninterrupted. Raskin Decl., at ¶2.  WMS has further developed different sales packages, price points, procedures for determining key phrases, etc. Raskin Decl., at ¶2.

WMS also builds behind-the-scene campaign websites that allow WMS to achieve first page placement for the valuable key phrases that its customers select.  The development of the campaign website varies in size based upon the number of key phrases the customer selects. Thus, the customer essentially ends up with two websites with the confidential campaign website acting as the "Marketing Engine" for the customer's public-facing website.  Raskin Decl., at ¶2.

WMS also sells LLC's, corporate credit and business plans in addition to campaign websites, custom websites along with various upgrades and renewals. Raskin Decl., at ¶4.  WMS uses three suppliers that provide the LLCs, corporate credit and business plans, respectively. Raskin Decl., at ¶4.  Plaintiff believes that Defendants are using WMS' vendors in conjunction with its Confidential Data. Raskin Decl., at ¶4.

Regardless of which business is involved, Plaintiff's Confidential Data has given Plaintiff an advantage in optimizing search engine results for its customers as well as (i) finding qualified customers, (ii) selling/closing qualified customers; (iii) servicing qualified customers and (iv) retaining qualified customers.  Such business advantages are valuable to Plaintiff. Raskin Decl., at ¶3.  Plaintiff's trade secret information fits into at least five categories comprising: (i) a process for optimizing the search results position of a customer's website based on key words; (ii) a detailed in-house procedure for identifying leads; (iii) list of leads generated from the detailed in-house procedure for identifying leads; (iv) a password protected website demo which Plaintiff uses to show customers the benefits of utilizing Plaintiff's search engine optimization

FisherBroyles, LLP
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

tools; and (v) a detailed in-house order fulfillment procedure to satisfy customer needs. Raskin Decl., at ¶5.

Importantly, to maintain its competitive advantages, Plaintiff must maintain the confidentiality of its Confidential Data. Decl., at ¶6. Unrestricted dissemination and use of Plaintiff's Confidential Data is causing Plaintiff irreparable harm. Raskin Decl., at ¶6. To prevent such irreparable harm, Plaintiff employs strict measures to maintain their proprietary information and data as confidential. Raskin Decl., at ¶6. All employees must agree to confidentiality provisions in their employment agreements. Raskin Decl., at ¶7. Moreover, Plaintiff systematically and routinely reminds employees of their obligations of confidentiality. Raskin Decl., at ¶7. Plaintiff further restricts access to and use of Plaintiff's Confidential Data to higher-level employees and those with a need to know. Raskin Decl., at ¶7. Plaintiff further mandates employees use password-protected computer systems and networks. Raskin Decl., at ¶7.

### C. Employment Agreements

Each of Defendants' Daileda, Oman and Hirst executed Employment Agreements having Confidentiality and Non-Compete provisions. Raskin Decl., at ¶8. Defendants Daileda, Oman and Hirst started a competing business Yes We Will while still employed at WMS. Raskin Decl., at ¶9. Yes We Will was formed on May 11, 2019 listing Daileda as President and Treasurer and Oman as Secretary and Director[2]. (See, Exhibit D) Raskin Decl., at ¶9. Yes We Will operates in the same city (Las Vegas) as Plaintiff, offers the identical services as Plaintiff and relies on Plaintiff's Confidential Data to unfairly compete. Raskin Decl., at ¶9. By way of example, Yes We Will uses a nearly identical sales pitch as Plaintiff, has copied the look and feel (and some text verbatim) of Plaintiff's website and utilizes the same proprietary search engine optimization schemes as Plaintiff. Raskin Decl., at ¶9.

### D. Defendants' History With Plaintiff

On or about December 4, 2006, Benjamin Daileda executed an at-will employment

---

[2] This was while Daileda and Oman were employed by Plaintiff.

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

6

agreement with KJR Management LLC and on or about January 5, 2009 Benjamin Daileda executed a confidentiality agreement with KJR Management LLC[3]. (see, Exhibit A). Raskin Decl., at ¶10. Daileda became a leading salesperson and closer at Plaintiff during his 12 years of employment. Raskin Decl., at ¶10. Daileda was trusted with a key to the office gate, office door and alarm code allowing him to come and go as he pleased. Raskin Decl., at ¶10. To date, the gate key, door key and alarm fob have not been returned forcing Plaintiff to change the locks and cancel the code. Raskin Decl., at ¶10. On or about January 5, 2020, Daileda sent a text message to Rob Raskin of WMS stating that he needed to move on. Raskin Decl., at ¶10. December 27th, 2019 was Daileda's last day worked at WMS. Raskin Decl., at ¶10.

On or about June 11, 2015, Oman executed an at-will employment agreement with KJR Management LLC. (see, Exhibit B). Raskin Decl., at ¶11. Oman became Superintendent of Plaintiff, was listed as a Manager on an entity related to and affiliated with Plaintiff and held two merchant accounts for Plaintiff. Raskin Decl., at ¶11. On or about January 6, 2020, Oman sent a text message to Rob Raskin stating that he was sick, and followed up on January 7, 2020 with a second text message to Rob Raskin stating that he decided he was going to stay home, rest and recover. Raskin Decl., at ¶11. Oman never returned to work at WMS. Raskin Decl., at ¶11. January 3rd, 2020 was Oman's last day worked at WMS. Raskin Decl., at ¶11.

On or about October 15, 2012, Hirst executed an at-will employment agreement with KJR Management LLC. (see, Exhibit C)[4]. Raskin Decl., at ¶12. Hirst became a leading salesperson and closer at Plaintiff during his 7 years of employment. Raskin Decl., at ¶12. On or about December 29, 2019, Hirst sent a text message to HR personnel at WMS stating that he needed another week off in addition to the holiday break. Raskin Decl., at ¶12. The request was denied and Hirst never returned to work at WMS. Raskin Decl., at ¶12. December 20th, 2019 was Hirst's last day worked at WMS. Raskin Decl., at ¶12.

Based on the timing of Defendants' Daileda, Oman and Hirst departing WMS, the

---

[3] KJR Management LLC is the predecessor company to Plaintiff. Raskin Decl., at ¶8.
[4] A portion of Hirst's Employment Agreement has not yet been located but he signed an Employment Agreement and associated confidentiality agreement identical to those signed by Daileda and Oman as all employees are required to do so.

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

7

considerable responsibility, authority and knowledge they represented, and concerning customer calls received after their departure from WMS, Plaintiff became suspicious and began an investigation. Raskin Decl., at ¶13.

### III.  MEMORANDUM OF POINTS AND AUTHORITIES

#### A.  Temporary Injunctive Relief is Warranted

Plaintiff is entitled to immediate injunctive relief against the Defendants pursuant to (i) the provisions of NRS § 600A.040 and (ii) the breach of their respective Employment Agreements.

Pursuant to the UTSA, this Court may enjoin any "actual or threatened misappropriation" and, in appropriate circumstances, take "affirmative acts to protect a trade secret." NRS § 600A.040. Moreover, under federal and Nevada jurisprudence, issuance of immediate temporary relief in a matter such as this is both warranted and encouraged. *Danberg Holdings Nevada, LLC v. Douglas County*, 115 Nev. 129, 146, 978 P.2d 311, 321 (Nev. 1999) (citation omitted); *see also, Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20, 129 S.Ct, 365, 376 (2008) (injunctions are extraordinary remedies, never awarded as of right, but based on a balance of competing claims of injury and the effect on each party of awarding or denying the requested injunction). As this Court said, unique and non-duplicable intellectual property assets such as Plaintiff's Confidential Data are highly sensitive and worthy of protection through injunctive relief:

> Public disclosure of a trade secret destroys the information's status as a trade secret. This harms the trade secret owner by both depriving him of a property interest…and by allowing his competitors to reproduce his work without an equivalent investment of time and money. Disclosure of non-trade secret confidential information is similarly recognized as a serious harm.

*Saini v. Int'l Game Technology,* 434 F. Supp.2d 913, 919 (D. Nev. 2006) (citations omitted).

As set forth herein, this matter involves the same harm noted above. Should Defendants be permitted to continue possession and use of Plaintiff's Confidential Data, Plaintiff will continue to suffer irreparable harm, loss and damage absent injunctive relief. Defendants are

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

8

using Plaintiff's Confidential Data to cut into Plaintiff's business for their own personal benefit. This is exactly the type of harm that the injunctive relief contemplated by the UTSA is intended to prevent.

Moreover, each of Defendants Daileda, Oman and Hirst is breaching the Confidentiality and Non-Complete provisions of their respective Employment Agreements. Once again, this is the exact type of harm that injunctive relief is well-suited to remedy.

Plaintiff is likely to succeed on the merits for each of their claims for relief under the UTSA, and breach of contract and Plaintiff will suffer irreparable harm unless Defendants are enjoined from continuing with their wrongful conduct related to those claims. In addition, the balance of hardships absent entry of a temporary restraining order and preliminary injunction weigh in favor of Plaintiff. Consequently, based on the likelihood of success on the merits and the balance of hardships favoring the Plaintiff, the issuance of a temporary restraining order and preliminary injunction is justified.

### B. The Standard for Obtaining a Preliminary Injunction

Plaintiff bears the burden of demonstrating that preliminary injunctive relief is warranted. In the Ninth Circuit, whether injunctive relief should issue requires that plaintiff demonstrate: (1) a strong likelihood of success on the merits; (2) a likelihood of irreparable harm to the plaintiff absent injunctive relief; (3) that the balance of equities favors the plaintiff; and (4) that issuance of an injunction is in the public interest. *Adidas America, Inc., et al. v. Skechers USA, Inc.,* 800 F.3d 747, 753 (9th Cir. 2018). The test in Nevada is similar whereby injunctive relief is available if: (1) the party seeking such relief enjoys a reasonable likelihood of success on the merits and (2) the party's conduct to be enjoined, if permitted to continue, will result in irreparable harm for which compensatory damages are an inadequate remedy. *Sobel v. Capital Management Consultants, Inc.,* 102 Nev. 444, 446, 726 P.2d 335, 337 (1986).

In this instance, all factors favor granting Plaintiff's request for injunctive relief.

### C. Plaintiff Meets Its Burden for Obtaining Injunctive Relief

#### 1. Likelihood of Success on the Merits of the Primary Claims for Relief

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

9

There is a strong likelihood that Plaintiff will succeed on the merits and thereby satisfy the first prong of the Ninth Circuit's test set down in *Adidas America*.

(a)  Misappropriation of Trade Secrets

To establish the claim of misappropriation of trade secrets under both federal and state law, Plaintiff must show: (a) the existence of a valuable trade secret; (b) misappropriation of the trade secret through acquisition, use, disclosure or non-disclosure of use of the trade secret; and (c) proof that the misappropriation is wrongful; because it was made in breach of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson,* 116 Nev. at 466, 999 F.2d at 358.

(i)  Plaintiff's Confidential Data are Trade Secrets

Plaintiff's Confidential Data, namely its trade secrets are subject to protection under the UTSA. A trade secret is information "[that] is secret and which is not generally available to the public, and which gives one who uses it an advantage over competitors who do not know or use the trade secret." *Religious Tech. Center v. Wollersheim*, 796 F.2d 1076, 1091 (9th Cir. 1986) (citing People v. Serrata, 133 Cal. Rptr. 144, 152 (Cal. Ct. App. 1976).

Plaintiff's Confidential Data identified as trade secrets fits within the definition of a "trade secret" under the UTSA. Plaintiff possess at least five categories of trade secret information comprising: (i) a process for optimizing the search results position of a customer's website based on key words; (ii) a detailed in-house procedure for identifying leads; (iii) a list of leads generated from the detailed in-house procedure for identifying leads; (iv) a password protected website demo which Plaintiff uses to show customers the benefits of utilizing Plaintiff's search engine optimization tools; and (v) a detailed in-house order fulfillment procedure to satisfy customer needs.

Moreover, trade secret information has and continues to provide Plaintiff with an advantage over its competitors. Plaintiff's success in the market is based largely on the trade secrets identified above which have been cultivated and optimized over more than 14 years in the search engine optimization and website development business. Access and use of the trade

secrets provides Defendants with immediate legitimacy in the market and circumvents the need to undertake the time-consuming, expensive and dedicated efforts that Plaintiff undertook to develop the trade secrets in the first place. Without use of Plaintiff's trade secrets, Defendants would have had no reasonable opportunity to effectively hit the ground running in the search engine optimization market and related markets as quickly as they have.

Plaintiff has taken reasonable steps to protect its Confidential Data including its trade secrets from disclosure. Plaintiff requires all employees to execute confidentiality agreements as part of their employment agreements, Plaintiff systematically and routinely reminds employees of their obligations of confidentiality, Plaintiff further restricts access to and use of its trade secrets and proprietary/confidential information and data to higher-level employees and those with a need to know and Plaintiff mandates employees use password-protected computer systems and networks. Defendants knew of Plaintiff's measures to keep its Confidential Data protected as each of their Employment Agreements included confidentiality provisions and each of the Defendants was aware of the measures employed by Plaintiff to protect its Confidential Data.

        (ii)    <u>Defendants Have Misappropriated Plaintiff's Confidential Data</u>

The USTA defines "misappropriation" as "acquisition or a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express of implied consent" in specified circumstances. *See,* NRS § 600A.030. Consequently, the USTA contemplates three theories of liability: (1) acquisition, (2) disclosure or (3) use." *Cave Consulting Grp.,. Inc., Truven Health Analytics Inc.,* No. 15-cv-2177 (SI), 2017 WL 1436044, at *4 (N.D. Cal. Apr. 24, 2017). The appropriation of a trade secret is wrongful where the acquisition or disclosure is without authority or is expressly or impliedly prohibited by contract or a duty prohibiting the same. *See,* NRS § 600A.030(2); *Frantz v. Johnson,* 116 Nev. at 466, 999 P.2d at 358.

In this instance, prior to quitting his employment with Plaintiff, Defendant Daileda forwarded at least 19 leads generated by Plaintiff to his personal email account. (see, Exhibit E). Raskin Decl., at ¶14. The only reason to do so was to steal the leads. Raskin Decl., at ¶14.

FISHERBROYLES, LLP
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

Doing so was also a violation of his Employment Agreement. Raskin Decl., at ¶14. By contacting Defendant Yes We Will and posing as a prospective customer, Plaintiff has learned that Defendants are using Plaintiff's same proprietary search engine optimization schemes, entire proprietary website demo and exact sales pitch word-for-word. Raskin Decl., at ¶15. Moreover, Defendants' follow-up actions to prospective customers mirror Plaintiff's exact proprietary methodology. Raskin Decl., at ¶15. In addition, Plaintiff has been contacting leads which have already been contacted by Defendants indicating that Defendants are further using Plaintiff's proprietary, detailed process for identifying leads. Raskin Decl., at ¶15. Defendants are offering, for example, search engine optimization packages for a minimum of $1995 and other services in direct competition with Plaintiff. (see, Exhibit F). Raskin Decl., at ¶15.

Given the experience and knowledge of Defendants Daileda, Oman and Hirst relative to the business operations of WMS, it is nearly a certainty that Plaintiffs will discover additional evidence through discovery to support its claims that Defendants have acquired and are using all ofPlaintiff's trade secrets. Nonetheless, Defendants have already acquired and are using Plaintiff's trade secrets, as set forth herein, in violation of the USTA such that Plaintiff is very likely to succeed on these claims.

      (iii)  Defendants Misappropriation Breached Duties Owed to Plaintiff

Each of Defendants Daileda, Oman and Hirst executed Employment Agreements and confidentiality agreements including Confidentiality and Non-Disclosure provisions. *See,* Exhibits A, B and C. Defendants Daileda, Oman and Hirst are each bound to the terms and conditions of their Employment Agreements which clearly and unambiguously set forth their obligations to maintain the confidentiality of Plaintiff's Confidential Data for a period of two (2) years after expiration or termination thereof. Defendants Daileda, Oman and Hirst left the employment of Plaintiff less than two months ago and are running a competing business that they started approximately eight months prior to voluntarily terminating their employment at WMS and using the time to steal as many prospective customers and as much of Plaintiff's Confidential Data as they could causing huge financial harm to the Plaintiff as a result.

FISHERBROYLES, LLP
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

Defendant Yes We Will is operated by Defendants Daileda, Oman and Hirst and thus is aware that it is similarly using Plaintiff's trade secrets without authorization.

Accordingly, based on the foregoing, Plaintiff has established a likelihood of success on the merits relative to its claims for violations of the UTSA.

(b)     Breach of Contract

Plaintiff is also likely to succeed on its claim for breach of contract relative to the Employment Agreements executed by Defendants Daileda, Oman and Hirst.  Each of Defendants Daileda, Oman and Hirst have violated the Confidentiality provisions of the Employment Agreements as well as the Non-Compete provisions.

Each confidentiality agreement includes a provision of confidentiality that lasts for two (2) years from termination or expiration of the same.  (See, Exhibits A, B and C).  Defendants Daileda, Oman and Hirst each left the employment of Plaintiff less than two months ago.  As set forth above, Defendants have acquired and used Plaintiff's trade secrets without authorization.  Moreover, Defendants have wrongfully used other of Plaintiff's Confidential Data such as presentation or pitch materials, pricing models, business strategies, deal closing points, etc., for their own benefit.

Each confidentiality agreement further includes a Non-Compete provision under which Defendants Daileda, Oman and Hirst agreed to not "…directly or indirectly be involved with a business which is in direct competition with the particular business line of the Employer that the Employee was working at any time in the last year of employment with the Employer."  By starting a new active business involved in the search engine optimization business and related buyeinesses, Defendants have clearly breached their Employment Agreements with Plaintiff.

Moreover, at least Defendant Daileda has breached a second Non-Compete provision reciting in part that "…the Employee will not divert or attempt to divert from the Employer any business the Employer had enjoyed, solicited or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Employment.  As set forth above, while employed by Plaintiff, Defendant Daileda directed at least 19 sales leads procured by Plaintiff to

13

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

his own personal email account presumably for later contact by Defendant Yes We Will. (see, Exhibit E).

Based on the foregoing, Defendants Daileda, Oman and Hirst have blatantly breached their Employment Agreements with Plaintiff. Thus, Plaintiff has established a likelihood of success on the merits for its breach of contract claims.

### 2. Plaintiff Has Suffered and Continues to Suffer Irreparable Harm Absent Injunctive Relief

Absent injunctive relief, Defendants will continue to possess and use Plaintiff's Confidential Data including trade secrets in violation of the UTSA to their benefit and Plaintiff's detriment. Moreover, Defendants will continue to be in breach of the Confidentiality and Non-Compete provisions of their Employment Agreements.

Irreparable harm is that injury which is so serious that a monetary award cannot adequately compensate the injured party. The 9th Circuit will not presume irreparable harm. A likelihood of irreparable harm requires a plaintiff to demonstrate that such harm is more probable than not. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008).

Courts that have adhered to the formula in *Winter* have found that a likelihood of irreparable harm exists where plaintiffs have provided evidence of specific, manifest acts by defendants, such as evidence of utilization or attempted utilization of a plaintiff's trade secrets, evidence of competition with a plaintiff after acquiring a plaintiff's trade secrets, or evidence of solicitation of customers, especially a plaintiff's, after obtaining a plaintiff's trade secrets. *E.g.*, *H.Q. Milton, Inc. v. Webster*, No. 17-CV-06598-PJH, 2017 WL 5625929, at *4 (N.D. Cal. Nov. 22, 2017) (holding that a plaintiff established irreparable harm where a defendant utilized confidential information and trade secrets and solicited the plaintiff's customers); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (granting a temporary restraining order where a defendant allegedly misappropriated customer information and sought to solicit and divert a plaintiff's customers); *Aerodynamics Inc. v. Ceasars Entm't Operating Co.*, No. 2:15-CV-01344-JAD, 2015 WL 5679843, at *12 (D. Nev. Sept. 24, 2015) (holding that a likelihood of irreparable harm existed where a defendant contacted a seller, former customer,

1  manufacturer, and competitor after a deal fell through with a plaintiff and the defendant gained
2  confidential information); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 11-02460C, 2011 WL
3  2607158, at *22 (N.D. Cal. July 1, 2011) ("[T]o the extent that Defendants are using Plaintiff's
4  trade secrets to compete with Plaintiff and to encourage Plaintiff's customers to switch their accounts
5  . . . the Court agrees that Plaintiff has shown a likelihood of irreparable harm."); *Credit Bureau
6  Connection*, 726 F. Supp. 2d at 1123 (holding that irreparable harm existed where a defendant
7  admitted to blocking, interfering, and diverting existing customers and new potential customers of a
8  plaintiff ). In this instance, it is clear that Defendants have not only acquired Plaintiff's trade
9  secrets but are, in fact, using them to promote a competing business. As detailed above,
10 Defendants have started an active business promoting search engine optimization in direct
11 competition with Plaintiff and are using Plaintiff's Confidential Data including trade secrets to
12 actively steal market share from Plaintiff. The harm is occurring as this Motion is being drafted
13 and prepared for filing. Indeed, every day Defendants continue to use Plaintiff's Confidential
14 Data is another day that Plaintiff's Confidential Data diminishes in value to the detriment of
15 Plaintiff. Raskin Decl., at ¶16.

### 3. The Relative Interests of the Parties Favors Plaintiff

"An employee's mere ability to take advantage of the employer's confidential information and thereby gain an unfair advantage may be sufficient for equity to restrain the employee from engaging in a competing business." *Nike, Inc. v. McCarthy,* 379 F.2d 576, 586 (9th Cir. 2004). Further, a "preliminary injunction maintaining the status quo may properly issue whenever the questions of law or fact to be ultimately determined in a suit are grave and difficult, and injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small and insignificant if it is granted." *Danberg Holdings,* 115 Nev. at 146, 978 P.2d at 321.

Equity favors issuance of the injunctive relief in this instance. Defendants knowingly entered into the Employment Agreements understanding that they were obligated to maintain the confidence of Plaintiff's Confidential Data including its trade secrets and not compete with

FisherBroyles, LLP
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

15

Plaintiff for a period of two (2) years. However, before even leaving the employment of Plaintiff, at least Defendants Dialeda and Oman, began efforts to start a competing business by re-directing leads to a personal email account and, on May 19, 2019, seven months before leaving the employment of Plaintiff, forming the entity Yes Will We, Inc., that now competes with Plaintiff. By ordering the injunctive relief, the Court will merely be placing Defendants in the position they agreed to be placed via their Employment Agreements. By not ordering the injunctive relief, the Court is jeopardizing Plaintiff's business as a whole or at a minimum greatly reducing the advantages and value it has long sought to create.

The equities in this matter clearly favor Plaintiff.

### 4. The Public Interests Favor Plaintiff

The adoption of the UTSA by the state of Nevada shows there is a strong public interest in protecting trade secrets. *Prot. Techs., Inc. v. Ribler,* 3:17-cv-00144-LRH-WGC (D. Nev. March 8, 2017). One of the primary benefits associated with the UTSA is the ability for injured parties to secure injunctive relief. No public interests favors Defendants' actions of trade secret misappropriation and breach of contract.

### D. Security Under Fed. R. Civ. P. 65(c)

Plaintiff requests and opines that no or nominal security is required in this case under Fed. R. Civ. P. 65(c). Plaintiff seeks to only enjoin Defendants from doing what Defendants willingly and knowingly agreed to do – not misappropriate Plaintiff's Confidential Data and not compete with Plaintiff. Defendants will not be damaged by being positioned exactly where they agreed to be positioned when they accepted employment from Plaintiff. Absent any credible harm raised by Defendants, no security or limited security is requested.

## IV. CONCLUSION

Based on the foregoing points and authorities, Plaintiff has shown a likelihood of success on the merits of the relevant claims of trade secret misappropriation and breach of contract against Defendants. The remaining three factors, namely the balance of hardships, relative

16
PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION

interests of the parties and the public interest all favor the Plaintiff. Therefore, Plaintiff respectfully requests that this Court grant a temporary restraining order and preliminary injunction pending final disposition of this case.

DATED this 24th day of February 2020.

                                  Respectfully submitted,

                                  **FISHERBROYLES, LLP**

                                  /s/ Rob L. Phillips

                                  ROB L. PHILLIPS, ESQ.
                                  Nevada Bar No. 8225
                                  5670 Wilshire Blvd., Suite 1800
                                  Los Angeles, CA 90036
                                  Telephone: (702) 518-1239
                                  *Counsel for Plaintiff*

**FISHERBROYLES, LLP**
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of February 2020, a true and correct copy of **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, DECLARTION OF ROB RASKIN IN SUPPORT THEREOF AND EXHIBITS** were served via The Court's ECF System as follows:

**COHEN JOHNSON PARKER EDWARDS**
375 E. Warm Springs Rd., Ste. 104
Las Vegas, Nevada 89119
H. STAN JOHNSON, ESQ.
sjohnson@cohenjohnson.com
RYAN D. JOHNSON, ESQ.
rjohnson@cohenjohnson.com

/s/ Rob L. Phillips
Rob Phillips, an employee of FisherBroyles, LLP