ROB L. PHILLIPS
Nevada Bar No. 8225
Rob.phillips@fisherbroyles.com
FISHERBROYLES, LLP
5670 Wilshire Blvd.
Suite 1800
Los Angeles, California 90036
Telephone: (702) 518-1239
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEBSITE MANAGEMENT SYSTEMS, LLC, a Nevada Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN DAILEDA, an individual residing in Nevada, MELVIN OMAN, an individual residing in Nevada, DEVAN HIRST, an individual residing in Nevada, YES WE WILL, INC., a Nevada Corporation, and DOES 1-X,<br><br>Defendants. | Case No.: 2:20-cv-00213<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing: March 4, 2020 at 10:30 am |

Plaintiff Website Management Systems, LLC ("WMS"), a Nevada Limited Liability Company ("Plaintiff"), by and through its counsel of record, files this Reply to Defendant's Opposition to Plaintiff's Motion for entry of a Preliminary Injunction against Defendants ("Motion").

Plaintiff bases this Reply on the pleadings and records on file herein, the Memorandum of Points and Authorities set forth below, the Declarations of Rob Raskin, Thomas F. Ciro, Christine Maclolek and Robert Lisi, all of which are attached hereto and incorporated herein by this reference, and any oral argument of counsel received by this Court.

**I.     REBUTTAL TO DEFENDANTS' STATEMENT OF RELEVANT FACTS**

Although it is not necessarily relevant to the underlying merits of Plaintiff's claims in this

1
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

case, Defendants would have this Court believe that three employees with 14 years, 8 years and 5 years of tenure at WMS, respectively, each left the employment of Plaintiff within a one month period of each other for essentially unrelated reasons. Other than the self-serving declarations of Defendant's Daileda, Hirst and Oman, Defendants have not provided a single document, including an email or text message, supporting their allegations that they were being "replaced and processed out" (see, Hirst Dec. ¶6); of "unfair work conditions" (see, Daileda Dec. ¶7); or of "unfair work conditions and unsafe work conditions" (see, Oman Dec. ¶6). Despite the cynical reasons now being leveled in support of Defendants Daileda, Hirst and Oman abruptly leaving the employment of WMS, the final emails and text messages from Defendants Daileda[1] and Oman[2], respectively, to Plaintiff suggest nothing but gratitude. The facts, as presented in the Motion, clearly show that Defendants Daileda, Hirst and Oman left the employment of Plaintiff to start a competing business which they had formed well before leaving WMS.

## II.  MEMORANDUM OF POINTS AND AUTHORITIES

### A.  Irreparable Harm

The irreparable harm that Plaintiff is suffering includes (i) loss of market share; (ii) loss of reputation; and (iii) loss of competitive advantage. While money damages may suffice to compensate Plaintiff for individual lost sales, money damages cannot adequately compensate

---

[1] Good morning Boss,

I have identified that it is time for me to move on and I will be seeking employment elsewhere. I'm very thankful for everything you have taught me and will forever be grateful for the 13 plus years of you being my employer. I know that you will easily replace me and carry on having a great 2020 with out (sic) me and I wish you all the best luck helping businesses grow. I will drop off my keys one day this week and pick up my last check.

Sincerely,

Ben

[2] (Oman) I will not be returning. I have decided to go ahead and stay home for a while and see how I like it. I want to thank you and kathey (sic) for having me for 5 years

(Rob Raskin) Needless to say, we wish you all the best!

(Oman) Thank you and you also Sir.

(Rob Raskin) 😀👍👍😀

2
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1  Plaintiff for (i) loss of market share; (ii) loss of reputation/goodwill; and (iii) loss of competitive
2  advantage resulting from Defendants' improper actions.

3        This is best borne out by examples. There are no less than three specific incidents where
4  existing customers of Plaintiff, were contacted by Defendants seeking to move them to 1st Page
5  Group for the same search engine optimization services that they contracted with Plaintiff to
6  provide. Notable with each customer, is that each customer was taken aback by receiving the
7  same pitch they received from Plaintiff previously. This is disconcerting for customers having
8  been told previously by Plaintiff that its services are unique in the industry.

9        On January 24, 2020, Roosevelt Smith, signed up as a customer with WMS. (Ciro
10 Decl. ¶2). On the very same day, Roosevelt Smith contacted WMS and inquired about being
11 contacted again about the same services he has signed up with WMS to provide. (Ciro Decl. ¶2).
12 Roosevelt Smith identified 1st Page Group as the entity that contacted him subsequent to him
13 signing up with WMS. (Ciro Decl. ¶2). Roosevelt Smith also detailed 1st Page Group using the
14 same sales pitch, pitch materials, including website demo, and search engine optimization
15 process as WMS. (Ciro Decl. ¶2).

16       On February 27, 2020, Mark McVey, a customer of WMS, contacted WMS and
17 demanded a refund of the $6500 he had paid for a marketing and custom website. (Ciro Decl.
18 ¶3). Mark McVey claimed the refund because he was very unhappy after talking to a
19 representative of 1st Page Group using the same sales pitch, pitch materials, including website
20 demo, and search engine optimization process as WMS. (Ciro Decl. ¶3).

21       On January 22, 2020, Fely Alzona, an existing customer of WMS, contacted WMS and
22 inquired about being contacted again about the same services she had signed up with WMS to
23 provide. (Maclolek Decl. ¶2). Fely Alzona identified 1st Page Group as the entity that contacted
24 her subsequent to signing up with WMS. (Maclolek Decl. ¶3). Fely Alzona also detailed 1st Page
25 Group using the same sales pitch, pitch materials, including website demo, and search engine
26 optimization process as WMS. (Maclolek Decl. ¶3).

27       On February 27, 2020, WMS was contacted by one of its generated leads named Katrina
28

**FisherBroyles, LLP**
5670 Wilshire Blvd. Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

3
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1 Creedon regarding search engine optimization services. (Lisi Decl. ¶2). Ms. Creedon advised WMS that she had already purchased a package for search engine optimization from 1st Page Group. (Lisi Decl. ¶3). Ms, Creedon detailed the sales pitch, pitch materials and search engine optimization and fulfillment process that 1st Page Group used which mirrors those of WMS. (Lisi Decl. ¶3).

1st Page Group is operated by Defendants and deals directly with search engine optimization. (see, Exhibit F of the Motion and Exhibit A hereof). While money damages can compensate WMS for the lost sales, it cannot compensate WMS for the (i) loss of market share; (ii) loss of reputation/goodwill; and (iii) loss of competitive advantage that can result from disclosures by the aforementioned customers and likely others that have been contacted by 1st Page Group and treated to their improper actions.

Moreover, WMS has been receiving a higher than normal number of requests for refunds since Defendants started the competing business. (Raskin Decl. ¶ 2). Plaintiff believes strongly that this increase is due to Defendants' improper actions. (Raskin Decl. ¶2 ). Moreover, the refund requests are coming from customers who signed up with WMS through Defendant Daileda while he was employed by WMS. (Raskin Decl. ¶2 ). These requests for refunds are also directly placing WMS' merchant accounts at risk. (Raskin Decl. ¶2 ). Without the integral and necessary merchant accounts, WMS' business as a whole is in jeopardy. (Raskin Decl. ¶2 ).

As further evidence of Defendants' true motives, Defendant Daileda is using a fake name when dealing with customers on behalf of 1st Page Group and using the same sales pitch, pitch materials, including website demo, and search engine optimization process as WMS. (Ciro Decl. ¶4). In some cases the materials were word-for-word the same as WMS. (Ciro Decl. ¶¶4-5). Defendant Daileda has been using the name James Webb. (Ciro Decl. ¶4). There can only be one reason for such tactics – to cover their identities and improper actions.

### B. Misappropriation of Trade Secrets Claim

Defendants spend a great deal of time arguing that Plaintiff has not provided evidence of its trade secrets. Under NRS § 600A.030(5)(a) a trade secret means information, including,

**FISHERBROYLES, LLP**
5670 Wilshire Blvd. Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

4

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1  without limitation, a formula, pattern, compilation, program, device, method, technique, product,
2  system, process, design, prototype, procedure, computer programming instruction or code that:
3  (1) Derives independent economic value, actual or potential, from not being generally known to,
4  and not being readily ascertainable by proper means by the public or any other persons who can
5  obtain commercial or economic value from its disclosure or use; and (2) Is the subject of efforts
6  that are reasonable under the circumstances to maintain its secrecy.

      Plaintiff has identified five trade secrets comprising (i) a process for optimizing the search results position of a customer's website based on key words; (ii) a detailed in-house procedure for identifying leads; (iii) list of leads generated from the detailed in-house procedure for identifying leads; (iv) a password protected website demo which Plaintiff uses to show customers the benefits of utilizing Plaintiff's search engine optimization tools; and (v) a detailed in-house order fulfillment procedure to satisfy customer needs. Plaintiff has filed documents with the trade secret specifics along with this Reply as well as an accompanying motion to file the documents under seal.

      The trade secret documents being filed with this Reply under seal comprise:

1. Plaintiff's proprietary and confidential Lead Generation Process (Exhibit B);

2. Plaintiffs' proprietary and confidential Fulfillment and Search Engine Optimization Process (Exhibit C); and

3. Screen shots of Plaintiff's proprietary and confidential Website Demo in comparison to the website Demo being used by Defendants (Exhibits D-F).

      The economic value in this instance is the ability for Defendants to immediately utilize optimum processes for garnering leads, optimizing search engine results and fulfilling the orders once placed. These assets, "convey an actual or potential commercial advantage…measurable in dollar terms." *Religious Tech. Center v. Wollershiem,* 796 F.2d 1076, 1090 (9th Cir 1986) (citing *People v. Serrata,* 133 Cal. Rprt. 144, 152 (Cal. Ct. App. 1976) (applying California's statutory enactment of the UTSA, which mirrors the UTSA as adopted in Nevada). If Defendants had started a new business from scratch, it could easily take years to get to the point that Plaintiff has

relative to creating the processes for garnering leads, optimizing search engine results and fulfilling the orders once placed. The 9th Circuit has stated that "…a trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources." *United States v. Nosal* 676 F.3d 854 (9th Cir. 2012). In this instance, for example, a directory is public knowledge and can be sought out by any person or persons but the work undertaken to develop a system and process for sifting through the bad and the ugly leads takes years to perfect and optimize as has been accomplished by WMS. (Ciro Decl. ¶6).

While Defendants allege that the trade secrets in question can be can be readily found in books, websites, conferences, and trainings in the industry, Defendants fail to offer up any of the readily available evidence that show the trade secrets in the public domain.

Plaintiff has submitted evidence in its Motion that Defendants have misappropriated and are using the trade secrets in question. Given such information collected during calls with Defendants posing as prospective customers, calls received from existing customers of WMS seeking refunds and clarification and a simple review of Defendants' demo website and related materials, it is undeniable that Defendants are operating at least one competing business and maybe more, including search engine optimization, and are using the trade secrets and other confidential information they misappropriated from Plaintiff.

By way of further evidence of misappropriation, Defendant Daileda admits that he forwarded confidential company voicemails to his personal computer despite it being against company policy. The reason provided by Defendant Daileda for forwarding the company emails to his personal computer is laughable (Daileda Decl. ¶5). Given Plaintiff's business is essentially run on computers, there are no less than 70+ computers on hand at Plaintiff's facility as well as speakers. (Raskin Decl. ¶3). Despite the defective speakers, Defendant Daileda never thought to raise the issue with management. (Raskin Decl. ¶3).

In another example of Defendants' blatant disregard for its improper actions, the original published 1st Page Group website that appeared online included the text "We have been helping businesses get found since 2010…" and "With more than 1700 clients from various industries,

6

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

FisherBroyles, LLP
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239

we have the expertise you're looking for to become found online." (see, Exhibit F of the Motion). The only problem is the text related to WMS' business not 1st Page Group's.

### C. Breach of Contract Claim

Pursuant to NRS § 614.195 a noncompetition covenant is void and unenforceable unless the noncompetition covenant:

(a) Is supported by valuable consideration;

(b) Does not impose any restraint that is greater than is required for the protection of the employer for whose benefit the restraint is imposed;

(c) Does not impose any undue hardship on the employee; and

(d) Imposes restrictions that are appropriate in relation to the valuable consideration supporting the noncompetition covenant.

Under Section (a) Nevada Courts have traditionally found continued employment of at-will employees to meet the valuable consideration threshold. *Camco, Inc. v. Baker*, 113 Nev. 512, 517 (1997).

Regarding imposition of restraint that is not greater than required for the protection of Plaintiff under Section (b), the courts have said that duration and geographical scope are important factors to consider. *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 157 (Nev. 2016)). However, "[t]here is no inflexible formula for deciding the ubiquitous question of reasonableness." *Ellis v. McDaniel*, 95 Nev. 455, 458–59, 596 P .2d 222, 224 (1979). The employee, a casino host, in *Golden Road* was prohibited by contract from employment, affiliation, or service with any gaming business. *Golden Rd. Motor Inn, Inc.*. 376 P.3d at 157. The Court correctly concluded that such a term is overly broad as the employee could not even take a job as a custodian in another casino within 150 miles radius of its original employer within one year from termination. Such restrictions are not prevalent in this instance.

Referring to the "Long Form" to keep consistent with Defendants' vernacular, Defendants Daileda and Oman[3] agreed to:

> "Other than through employment with a bona-fide independent party, or with the express written consent of the Employer, which will not be unreasonably

---

[3] Oman's agreement included the same term but was for a period of three (3) years.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

7

> withheld, the Employee will not, during the continuance of this Agreement or within two (2) years after the termination or expiration, as the case may be, of this Agreement, be directly or indirectly involved with a business which is in direct competition with the particular business line of the Employer that the Employee was working during any time in the last year of employment with the Employer."

Accordingly, Defendants Daileda and Oman are able to (i) take employment with a bona-fide independent party (that is, a business having legitimate business lines that do not compete with Plaintiff (e.g., for a company that handles radio ads, TV ads and search engine optimization, the employee could work for the new employer's radio ads and/or TV ads business lines) or (ii) take employment with a business not in direct competition with Plaintiff and further limited to the particular business the employee worked on the last year of employment with Plaintiff. Both Defendants Daileda and Hirst claim to have been involved in the telemarketing business prior to joining WMS and thus have skills and can work in other telemarketing businesses not in direct competition with Plaintiff. (see, Daileda Decl. ¶4 and Hirst Decl. ¶4). Oman is certainly free to take employment as a custodian or handyman for any company he desires. Plaintiff went as far as to agree to provide written consent for the employees to take on new employment but Defendants chose to not seek consent and directly compete with Plaintiff.

Regarding the imposition of undue hardship on the employee under Section (c), as set forth above, Defendants Daileda, Hirst and Oman have significant options when it comes to finding employment that does not compete with Plaintiff.

Under Section (d), the restrictions imposed under the agreements signed by Defendants Daileda, Hirst and Oman are appropriate in relation to the valuable consideration supporting the noncompetition covenant. These employees were employed collectively by WMS for approximately 27 years and no one employee was employed less than 5 years. Each left on his own accord with the desire to take advantage of the confidential and proprietary information they had learned from WMS. The valuable consideration received by each of Defendants Daileda, Hirst and Oman is the lengthy at-will employment and wages, bonuses and related benefits they received as at-will employees.

### D. Standing

On or about January 1, 2015, WMS took over as the operating entity for KJR

8

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Management ("KJR"), including the oversight and enforcement of the various agreements between employees and WMS. (Raskin Decl. ¶4). Both entities have the same manager and are run by Kathleen Raskin. (Raskin Decl. ¶4). The employees of KJR were advised of the corporate change. (Raskin Decl. ¶4). KJR remains an active entity handling various WMS matters to this day. (Raskin Decl. ¶4). Plaintiff is preparing a motion to add KJR as a Plaintiff to this case. Even assuming the Court determines that WMS may not be the correct party to enforce the agreements, it is not dispositive of the decision whether a preliminary injunction should be issued. That is, unless there is a compelling reason that KJR cannot be added as a party, the likelihood of Plaintiff, whether it be WMS and/or KJR, succeeding on the merits of the underlying causes of actions does not change. Accordingly, unless the Court believes the lack of standing argument cannot be addressed by adding KJR as a plaintiff, it has no impact on the issue at hand.

## III.  CONCLUSION

Based on the Motion and foregoing points and authorities, Plaintiff has shown a likelihood of success on the merits of the relevant claims of trade secret misappropriation and breach of contract against Defendants. Moreover, the remaining three factors, namely the balance of hardships, relative interests of the parties and the public interest all favor the Plaintiff. Therefore, Plaintiff respectfully requests that this Court grant the preliminary injunction pending final disposition of this case.

DATED this 2nd day of March 2020.

Respectfully submitted,

**FISHERBROYLES, LLP**

/s/ Rob L. Phillips
_____
ROB L. PHILLIPS, ESQ.
Nevada Bar No. 8225
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (702) 518-1239
*Counsel for Plaintiff*

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

9

# CERTIFICATE OF SERVICE

I hereby certify that on the 2ND day of March 2020, a true and correct copy of **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, SUPPORTING DECLARATIONS AND EXHIBIT A** were served via The Court's ECF System as follows:

**COHEN JOHNSON PARKER EDWARDS**
375 E. Warm Springs Rd., Ste. 104
Las Vegas, Nevada 89119
H. STAN JOHNSON, ESQ.
sjohnson@cohenjohnson.com
RYAN D. JOHNSON, ESQ.
rjohnson@cohenjohnson.com

/s/ Rob L. Phillips
Rob Phillips, an employee of FisherBroyles, LLP